Next case will be 081466 Agilent Technologies v. Affymetrix May I please the court? The district court made four errors in this case. First, the court used the wrong patent specification to construe the claims. Second, the court misconstrued the term closed chamber to mean a system that is capable of being closed. Third, the court erroneously found written description in the Biesemer specification. Biesemer does not describe a method using a closed chamber and bubble mixing. And fourth, the court erroneously ignored the rule that the written description must be commensurate in scope with the claims. The Biesemer specification is not commensurate in scope with the claims. Let me begin by addressing the court's failure to use the proper specification to construe the claims. When an applicant copies a claim from an issued patent to provoke an interference, there is a threshold question as to whether the applicant is entitled to copy the claim. To answer that question, Inres Binas says that the claims are construed in light of the specification of the issued patent. Since then we've had a rule making procedure in which the patent office has said you construe it in light of the spec in which it appears. There is a rule. That would send us back to the drawer use, right? Yes. The patent office does have a rule that says that the claims are to be construed in light of the specification in which the claims appear. And certainly as in the... What's the purpose of that rule? The purpose is so that when you're examining, you're trying to decide whether the applicant is entitled to their claims. And in a situation where the claims are different, there can be preliminary motions to determine whether or not the claims are patentable to party one or party two. And those questions could include things like anticipation or obviousness. And in that context, you certainly construe the claims in light of the specification in which the claims appear. The problem we have here is that Chambry first uses the closed chamber. Correct. And Bessemer has copied that into their claims. Yes. And now they want to use closed chamber as found in Chambry in light of what Bessemer says. That's correct, Your Honor. That at least invites the danger of new matter, doesn't it? It does invite the danger. That they can construe the reference to closed chamber in light of their own specification and implicitly incorporate new matter in their definition. That's correct. And it invites the problem of having an interference when the two parties actually invented very different things. How do you deal with the bubble reference in Bessemer? It does specifically discuss – let me find my little quote here – the bubbles agitate the fluid, increasing the hybridization rate between the targets and the complementary probe sequences. The bubbles are mentioned in Bessemer only in the context of their flow-through agitation systems, the And one thing that's important to recognize is that – But when Bessemer's mentioned that, why wouldn't it be pretty obvious that your paint mixer closed system is going to generate bubbles that mix things, too? Well, there are two questions there. The first question is – I think you're probably right – when you use the nitrogen in the Figure 29 embodiment, do you get bubbles from the nitrogen? And the answer to that is not necessarily, because if the nitrogen is being inserted – No, I'm talking about before you shake it. When you're using the nitrogen to force the fluid from the receptacle into the reaction chamber – The closed chamber. That's the closed chamber. That's where the nitrogen comes into play. And the board found that it was inherent when that nitrogen was used that you would get bubbles in the reaction chamber because of the earlier disclosure. That is not true, and both experts testified it's not necessarily true, because if you are using the nitrogen that is being put in at the top of the receptacle – Not necessarily true, but the board found – What can we say? That it's often true? No, the board found that it was inherent. The board found that it was necessarily true. Well, to be exact, Shimbry had not offered evidence sufficient to show that it would not necessarily be true. Not necessarily, that's right. But back to my point, if the nitrogen comes in at the top of the container, the nitrogen is going to act like a piston, and it's just going to force the fluid out and into the chamber. The only way you might get bubbles is if the nitrogen actually came down into the fluid and then it bubbled through. That's certainly not disclosed in the context of the figure 29. Still, you've got this specific statement in Bessemer, the bubbles agitate increasing the hybridization rate. That's pretty flat on what you're saying that your Shimbry reference is. No, no. The mixing that occurs in the Bessemer application occurs, it always occurs, either with the flow of fluid or vortexing. It's never just the bubbles. The bubbles are mentioned – It's never just the bubbles, but the bubbles are, well, it says it right here, they increase the hybridization rate. If they are present, if they are present, and they're only present – I didn't worry about the bubbles so much. I thought your invention is the single bubble that floats around and mixes things, right? Correct. That's very different from this stream of bubbles produced by the nitrogen. Correct. You didn't really argue the A-bubble versus bubbles point, though, did you? We did not. Is that really before us? No, it is not, because – Frankly, I wondered why it wasn't, but it's not before. The A-bubble, certainly if the claims are construed in the context of the Shimbry application, could be construed to be a single bubble. But since the claims were construed by the court in light of the Bessemer application – You just Yes, it's a single bubble that is moved – And it's in this circular thing. Isn't it the Bessemer one that has all these different chambers? Yes, it has multiple chambers. That's the nitrogen business? Yes, and the fluid comes through tubes into the reaction chamber and then flows out again. It does disclose at one point that bubbles are in the system, although our expert testified below that it was not clear to him how bubbles could get into the system. But it does say they are there. It doesn't explain how they get there. What is the advantage of your bubble system? Our bubble system works extremely well in these very small quantities of fluid. They are very difficult to actually move the fluid right next to where the DNA is, right next to the surface. Surface tension problem, right? Yes, there are surface tension problems. Conventional mixing, like vortexing, or like even this flow through, don't necessarily replenish the targets right next to the surface where the probes are. Unless the bubbles agitate the fluid, increasing the hybridization rate, to quote from Bessemer. That is exactly what Bessemer discloses. Whether it actually succeeds in that is another question. But it does say that the bubbles will agitate the fluid. Now, let me go back to the question. By the way, one other. What's our standard of review here? Because usually you do this for substantial evidence because it's factual, but we've got, there is a de novo because new evidence was submitted. Well, the court ruled, the district court treated the standard of review as to the presence of the bubbles in figure 29, for example, as substantial evidence. But there was in fact new evidence that was introduced to the court below in the form of Affymetris' expert and also from our expert. So the court got that wrong. There was new evidence introduced and the court's review of that issue should have been de novo. Now the question of this court's standard of review is one that I think is more challenging. Since, because the district court was, when it says substantial evidence, it is saying it's really acting as an appeal court and then you're reviewing what that judge has done. And arguably that could be a de novo review. But I think probably because the district court is acting as a fact finder that your standard of review here is probably clearly erroneous. Was the judge's decision clearly erroneous? And I would say certainly because he used the wrong standard of review, the substantial evidence, instead of de novo. As to that aspect of the decision, it's clearly erroneous. And you started out and then went off about which of the prior cases, Spina or Colter or the other ones, should control here, which I guess would out determine the outcome of the case. Yes. Now, Spina, that was an earlier case. Yes. Somebody said something about a rule that may have been passed and changed it, but would a rule overrule our case? No, and that's precisely what Roe says. And I think that... But Dror and Spina specifically... Let me just have an answer to this question and then we can get the... Well, yes, the PTO cannot overrule a judicial decision of this court. And so, despite its attempt to try and overrule Spina by its own regulations, its own rules, the Roe versus Dror case clearly says that the different circumstances, because in Roe, the question was patentability over the prior art. Is this a Spina or a Dror? This is a Spina case, because the question is, it's a standing question. The question is, did Biesemer have standing to even get into this interference? Did they invent what they did? And I think that determination is by construing the claims in light of the Schembri specification. And that is peculiar to a case where you copy the claims. If you don't copy the claims and the claims are different, then you have an opportunity to argue that there's no interference in fact, which our opponents suggest we should have argued in this case. But when the claims are identical, you don't have an opportunity to argue that. The PTO rules used to expressly say that you cannot move for no interference in fact if the claims are identical. The rules have been streamlined recently and that rule no longer appears there, but there's certainly nothing to suggest that the rule has been changed. But even more importantly, there's a policy question here, and you certainly couldn't move for no interference in fact, argue that there's no interference because when you construe the claims in light of our specification, it's different than when you construe the claims in light of their specification. And then you end up with two patents with identical claims. So, I mean, that is a matter of policy. You certainly don't want to have two patents being issued with identical claims. So there has to be some mechanism for this threshold question of, is there interfering subject matter here? And the way you do that is when claims are copied, you have to go through, you have to show written description for the invention that was actually made in the issued patent. That also only seems fair because effectively what they're doing here is taking the claim away from us by saying that, you know, they have written description in their specification for the claim. When the claim is construed in light of their specification, it's a very circular argument, and we end up losing the claim, and they haven't disclosed the same invention that we disclosed. So I think that despite what the PTO may be trying to do with the rule, in the situation where the claims are copied, you have to have this threshold question. What turns on this? Is this related to the bubbles issue? I mean, what turns on the choice between the Spina and Rowe cases? Well, it certainly impacts what a closed chamber is and what it means to introduce fluid into a closed chamber. It could also impact questions like... I'm completely confused, but certainly the Bessemer, those chambers are closed, it's just that there are a bunch of different ones, isn't it? It's a closed system. It's a closed system, right. Right, but the chamber that is defined in the claim is the reaction chamber. It's what they refer to as cavity 31. It's between the substrates. They're all closed. Well, it depends on what you mean by closed. And if you mean it's closed in the sense that it's not going to leak out on the floor, it is closed. It is closed, as their expert says, means closed to the sample. And the only time that the... certainly in our context, if you look at our specification... But the vortexer is. The vortexer arguably is, because you shut the valves and then you have fluid that... And then the question is whether you've got bubbles in the vortex. The question is, do you have bubbles? And as I said, you don't necessarily get the bubbles from the nitrogen. And then the question is the void. Is a void there inherent? And our position is that it's not inherent, particularly when the specification says that the cavity is filled. Mr. Holmes, we'll give you your bundle of time back. Thank you, Your Honor. Mr. Holmes. Thank you, Your Honor. May it please the Court. My name is Stephen Holmes, representing Affymetrix. I have three points on... Is this a spina or a drawer case? Your Honor, this is a drawer case. How can it be a drawer case? There's no prior art at stake. This is simply a new matter. This is a spina, right on the nose, isn't it? No, Your Honor. In spina... Tell me how it's not. So, in drawer, the crux of drawer... Is prior art investigation, and that is not present here. Well, it was validity, which was based in that case on prior art, but validity also could encompass... The drawer specifically says spina stays in place for those new matter issues, which this is. It specifically addresses the new rule and says that can't change the spina-drawer distinction. How can you argue this is a drawer? Well, Your Honor, one of the points that this Court made in spina was that the Patent Office was not flouting judicial authority in writing a new rule. And that comes from a change in policy of how interferences were handled. There was a change in the rules that made interferences such that you could consider validity issues in the course of an interference as well. And in the previous case, under spina, and the cases supporting that, they were all based on the argument that you had to have a right to copy, the right to make the claim.  And so when the Patent Office rewrote the rule to say, read the, construe the claims in light of the specification in which those claims are found, in drawer, this Court said the Patent Office was not flouting spina. It was a different situation. And so today, we're looking at rules that say exactly the same as they did in drawer. You look at the specification in which those claims are found, and that, it makes total sense. But you've written into your specification a term that was not there before, closed chamber. And now you want to interpret it in light of something you did not have before. That's just inviting new matter supplementation of your original invention, right? You're going to pull closed chamber out of somebody else's later invention, the distinction between your invention and theirs, and then try and say, look, we've got a closed system, that's the same as a closed chamber. I agree you're wrong. The key is, are the inventions the same or not? Now, the wording has to be, what the invention is, has to be interpreted, or should be interpreted in light of what the disclosure is in that particular document. So if the invention in Shembury, construed in light of Shembury, is the same as the invention in Bismarck, construed in light of Bismarck. So if we're looking at the term closed chamber, since that came out of Shembury, we'll look at Shembury, right? Well, I would disagree. That's the Spina rule. I just gave you the Spina rule, and that seems to apply dead on in this case. You know, I disagree because this is in an interference where it's considering whether the inventions are the same. Spina was in the ex parte in the patent office. This is now in an interference where the issue is whether the Bismarck claims have written description support. And to construe those claims in light of a completely different patent specification, which only would turn on the... All we're doing is construing the term closed chamber. We're going to find out its meaning, and then we'll check and see if it's in Bessemer. And you want to say, no, I want to define it in terms of Bessemer, and then also show how it contains the necessary definition. That seems to be, as I say, inviting new matter abuse of the interference process. Well, Agilent could do exactly what they could have done in this case, which was argue that the inventions were different by filing a no interference in fact motion. They could have done that. They chose not to do that. That's also a threshold issue. That's because they relied on the Spina rule. Well, you mentioned Spina in any of their briefing before the interference board. There was no discussion of Spina at that point. Can you tie your discussion to the actual invention here? Your Honor, yes. The reason this case came about is because Affymetrix had come up with this invention several years before Agilent, which was the use of bubbles in a closed chamber, a closed system, which is disclosed in the Bessemer application. There are plenty of examples of sealed systems, which are... But theirs seems very different, right? Because your bubbles are part of the system, but they're incidental. Their single bubble is the entire mixing mechanism. That seems quite different. Your Honor, the bubble mixing is a key in the Bessemer application, just as it is in the Chambry. Now, in Chambry you could have multiple bubbles because you could heat more than one of the resistors. It's not required to have just one bubble. May I show your Honor a visual aid that we used with the court before? But I'm not sure you've addressed our brother's concern here. And I think he's hit on something pretty important. Yeah, you happen to have mentioned the word bubbles, but you use them in a very different way than as the primary mixing element. Your Honor, I would disagree that they're not used in a primary way to mix. I mean, taking figure 29, which is the vortex... Well, your vortexer does it... It says right in the Bessemer. It does it by motion. And the circulator does it by circulation. So the bubble is not the thing that does it. Whereas, as our brother points out, the bubble is the whole thing. Your Honor, I apologize for interrupting. I disagree because in the vortexer, the only reason you would get mixing is if you left a void. The person still in the arm would know that you had to do that. If something is going to mix as a paint mixer, if it's completely solid and completely filled, you would never get mixing. You have to have a void, which is a bubble. So in that vortexer, there is one bubble there when there is that void that's left there. Now, as your Honor pointed out earlier... Why do you need a void? I don't understand. You can't mix without bubbles? That's correct, your Honor. You can't mix anything? You can't mix any liquids without bubbles? Well, the only situation in which you could mix something without a void, without a free surface, would be if there was a difference in density. For example, say, oil and water. But Bessemer is only mentioning bubbles in the circulator. It doesn't mention in the paint mixer at all. It's inherent, your Honor, in the fact that it says it vibrates, it agitates it like a paint mixer. The way a paint mixer works is it always, as our expert testified, you always have to have a gap at the top of that paint can. And in this way, the chambers, in this case, in the Figure 29, you always have to have a gap at the top there for that to mix. Otherwise, you can rotate it, but you will not actually get any mixing. Didn't your expert admit that bubbles are not inherent in the vortex? He did not, your Honor. He admitted that you didn't necessarily... No, it does not necessarily have to do that, is exactly what he said. Well, he was talking about whether bubbles, when you're filling the cavity with the nitrogen, in that situation, you may not, as Mr. Jenkins said, you may not get bubbles always in every embodiment there going into the fluid. But the agitation using the vortex, you always have to have a gap for that to mix. I think one of the other points is that Agilent argues that a closed chamber can only be... I don't know why that would be decisive. Obviously, most inventions embody elements that are part of previous inventions, right? If you have something that's dictated by the laws of nature, your void, then the next invention is going to overlap with that. But as Judge Redman was saying, in Agilent's invention, a bubble is the entire mixing mechanism, rather than the blast of nitrogen, which produces bubbles, which you may need. They don't really help the mixing, it's just nature requires that there be some bubbles. Your Honor, I think as Judge Rader pointed out earlier, the specification says bubbles agitate the fluid to increase hybridization. Bubble mixing is key in the BISMA application. And you can see from embodiments... So that's the question, keenness? Is that the criteria? That is the invention that BISMA came up with. So it's not just the bubbles are there as some sideshow. They are key to the mixing. So what? So what if they're key? It still seems to me a very different invention, even if it does overlap yours. Because all inventions overlap something. May I point out one thing, Your Honor, which was... Your machine looks so different. This may be a very naive reaction. You have all these chambers linked together, and that's very different from his apparatus. One thing I think it's important to point out is when Affymetrix copied the claims... You want to really annex every method conceivable of mixing these fluids. Because you think every mixture of a fluid has bubbles. So they could be mixing paint. They could have some new method of mixing paint. Mixing anything, you would say, oh, it's got bubbles. It infringes. If it's in... This is all in the context of a micro-rehybrization device... Why do you say that? Why couldn't it be macro? Well, because these devices happen to be... Well, happen to be. These devices happen to be very different. So happen to be is not what you regard as critical. So suppose somebody has a mixing device for something very large. Some gigantic chemical components, and they have bubbles. Then you say, oh, they have bubbles. If it's in the context of a hybridization chamber, then that would be... Have you sued other people? Your Honor, we don't have a claim yet to be able to sue people with. Okay, that's next. I'd like to point out one thing, which is that in the interference, when afferentries copied the claims, they specifically did not copy claims that Agilent had in its patent related to nucleating a bubble in the chamber. Specifically, we did not claim the invention of nucleating a bubble in a chamber, which is what Agilent really discloses in the very short Chambry specification, heating the fluid to create a bubble with the resistors. Now that is a very narrow disclosure, but yet they claim a very broad invention in the Chambry patent. When Affermetrix saw that specification and realized, well, we've also done bubble mixing, and we came up with that previously. Why should Agilent get that claim with a very narrow specification? Well, we actually came up with something that discloses that invention earlier than Agilent. So that was the motivation for initiating the interference. If Agilent had believed that the inventions were different, they could have moved in the interference for a motion that the inventions are different. Really, there's nothing in policy terms to suggest that just because the claims happen to be worded the same, you can't get two patents for that. You can obviously have different means plus function claims that mean the same thing, but the inventions are different, and you can define terms differently. So the mere fact that the claims mean the same thing is not a reason for not having those claims. Did the district court err by using a substantial evidence standard on the bubbles issue when, in fact, there were many new depositions as part of the evidence? Your Honor, in our submission, if you reviewed it under either the substantial evidence standard or a de novo review, you'd come up with the same result. Now, the court says in Mazzari that you use a substantial evidence standard unless the evidence differs from what was in the record below. In our submission, there was no new evidence that was conflicted with the evidence that was before the... Why was it admitted if it didn't add anything? Your Honor, there is a right to admit new evidence... What, that doesn't add anything? That is the case, Your Honor, yes. Well, it doesn't make any sense. Your Honor, those are the rules. I mean, you have uncontested facts, and you say, well, yeah, but I have a lot... It's not contested, but I have more evidence I'd like to put in. You know, one of the strange things in this case is that in the interference, Agilent said, we don't need expert evidence in this case to interpret the claims and the invention. We just don't need any expert evidence. And now they are relying, trying to pull apart small, minor differences between the experts to try and suggest that somehow that raises a genuine issue of material fact when it does not. So, in that metric submission, the correct rule is the Patent Office Rule 200B, which does not violate the Spina rule, as did the earlier Rule 633A. So Spina is still good law, but does not apply to these facts. Rule 200B is what applies. And Agilent has not suggested that Rule 200B somehow overruled Spina. I think I also just want to make a very quick comment that in Agilent's briefing, they suggest that we conceded that if you interpreted the claims through Elijah Shembury, we somehow conceded their construction. And, of course, there hasn't been any briefing or construction based on the Shembury specification, and we submit that was right. The Court found it should have been the Bismuth specification. One other very small point. Your Honour asked about the advantage in the Shembury patent. Well, in fact, Agilent has never commercialized anything in the Shembury patent. That device doesn't exist today. Whereas the Affymetrix device, and I was wondering if I could just very quickly in my last two minutes hand out something for the Court. Your Honour, this is an exhibit that we put together, we used for the District Court. This is Affymetrix's actual cartridge. It shows figure 31, which is in the Bismuth specification. Do you have one more? I apologize. And... The only reason I wanted to show this to Your Honours is that the chamber that Agilent is saying is just the reaction chamber in figure 31. They say it's just 3-1-0. Whereas, in fact, if you look at what's actually contained, what's sealed, what is the sealed chamber, the sealed sort of space here, it actually also includes channels 3-4-1-1 and 3-4-1-3. And so you can see Agilent's idea that this is just where the array is, that's the only sealed area, is simply not the case. Figure 31 discloses that the substrates here contain channels as well. And those are also part of the chamber. Are you inviting us to do fact-finding here? No, Your Honour. This is something that was before the District Court, and the District Court came to its conclusion that there was no genuine material fact. So no further questions. I'm out of time. All right. Thank you very much. Mr. Jenkins? I'd like to first respond further to a question that Judge Posner asked earlier, and that is what difference does it make with respect to the outcome, which specification is used to construe the claims? And a contested issue both before the Board and before the District Court was the meaning of the last two elements of the claim, which is providing a bubble in the fluid and moving a bubble within the fluid. And there was a substantial question as to whether that meant that the bubble had to be in the closed chamber and whether the movement of the bubble had to take place in the closed chamber. Those issues, I think, could well be impacted, or those constructions could well be impacted by which patent specification you looked at. You mean how closed chamber is defined? The question of providing a bubble within the fluid. The question was should that bubble be construed to be within the closed chamber, in that particular claim element, even though the closed chamber is not mentioned in that claim element. And so my point is that depending upon which specification you use to construe that claim element, you might reach different results. We raised that issue below. We didn't raise it on appeal because we thought there were sufficient other issues that we should address on appeal. With respect to Affymetrix's argument that bubble mixing is key in the Biesemer application, bubble mixing is really only mentioned in passing. It is mentioned twice, I think, in the specification and certainly not mentioned at all in the context of some of the embodiments, specifically figure 29. With respect to the question of whether the district court used the wrong standard and applied substantial evidence, and despite the fact that there was new evidence presented on the bubble mixing issue, Affymetrix has argued that the evidence was really not important or not meaningful. Actually, the evidence went to precisely what the board had said was missing from the evidence that had been presented below, specifically the fact that bubbles are not inherent in figure 29. If there are no other questions, Your Honor, I will yield my time. Thank you very much. The case is submitted. All rise.